**PACKAGING CORPORATION INTERNATIONAL, Plaintiff,**

v.

**TRAVENOL LABORATORIES, INC., Defendant.**

**No. 81–2104–CIV–EPS.**

United States District Court, S.D. Florida, Miami Division.

July 18, 1983.

Larry A. Stumpf, Miami, Fla., for plaintiff.

Harold L. Ward, Miami, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AS TO COUNT III OF COMPLAINT AND DENYING MOTION AS TO COUNTS IV AND V

SPELLMAN, District Judge.

THIS CAUSE came before the Court on Defendant's Motion for Partial Summary Judgment, filed January 26, docket no. 50. Having reviewed the record in this cause and being otherwise duly advised, it is hereby

ORDERED AND ADJUDGED that the Motion is GRANTED as to Count III of the Amended Complaint and DENIED as to Counts IV and V.

The facts of the case at bar are as follows. The Plaintiff, Packaging Corporation International (PCI), is a seller, and lately manufacturer, of metallic clamping devices used to seal tubing and thereby the container used by hospitals and blood banks to collect and store blood and blood components. The Plaintiff sought to sell the clamps it manufactured to the Defendant, Travenol Laboratories, Inc. (Travenol).

This litigation ensued from the negotiations surrounding the manufacture and attempted sale of these clamps to Travenol. PCI filed a Complaint alleging violations by Travenol of the state fair trade and federal antitrust laws, among other things. Travenol has moved for summary judgment on Counts III, IV, and V of the Complaint as amended.

The standard of scrutiny to which a complaint is subjected on a motion for summary judgment is stated in Fed.R.Civ.P. 56(c) as follows: The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Count III of the Amended Complaint concerns claims of conduct by Travenol constituting unlawful and unfair competition in violation of Section 501.204, Florida Statutes (1982).[1] This statute has been called .

---

1. (1) Unfair methods of competition and unfair   or deceptive acts or practices in the conduct of

the Florida "Little FTC," because it is an analog of the federal fair trade law. *See* 15 U.S.C. § 45(a)(1) (1982).[2] The Florida provision was intentionally patterned after the federal law and its interpretation is expressly tied to that of its federal counterpart. *See* Fla.Stat. § 501.204(2) (1982).[3]

Travenol's motion for summary judgment on these claims under this Florida statute asserts that no private right of action exists for PCI under this statute on the facts of this case. This Court concludes that in this case no such private right of action exists.

■ Travenol argues that PCI was not a "consumer" within the meaning of the Florida statute. This Court agrees and further finds that even if PCI could be deemed to be a consumer, this case involved no "consumer transaction" within the meaning of the Act. In either case, PCI has no cause of action under the Florida Deceptive and Unfair Trade Practices Act ("the Act").

The Act provides, in pertinent part, two crucial definitions:

As used in this chapter, unless the context otherwise requires, the term: (1) "consumer transaction" means a sale, lease, assignment, award by chance, or other disposition of an item of goods, a consumer service, or an intangible to an individual for purposes that are primarily personal, family, or household or that relate to a business opportunity that requires both this expenditure of money or property and his personal services on a continuing basis and in which he has not been previously engaged, or a solicitation by a supplier with respect to any of these dispositions.... (9) "consumer" means any individual; child, by and through its parent or legal guardian; firm; association; joint adventure; partnership; estate; trust; business trust; syndicate;

fiduciary; corporation; or any other group or combination.

It appears possible that PCI, as a corporation, might in certain instances be considered a consumer. It does not appear, however, that PCI can claim that the thwarted transaction in the case at bar was a consumer transaction.

PCI in the case *sub judice* was the seller/supplier, not the purchaser. This fact would appear to be a fatal variance under the Act. Moreover, this Court adopts the reasoning of *LJS Company v. Marks,* 480 F.Supp. 241 (S.D.Fla.1979) (J. King), in regard to the interpretation of a relatively new and unconstrued state law. This Court notes that *Marks* was decided before the Florida "Little FTC" was amended to define "consumer." The added definition does not alter the validity of that Court's reasoning for the purpose of this Opinion, however.

As stated in *Marks,* the applicable law in this case is that of Florida. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). It is not clear, however, what the law of Florida is on the facts at hand. In such a situation "[t]he considerations of 'judicial federalism' can best be served if this Court decides this motion on grounds which require the least amount of federal judicial forecasting of state court decisions." (Footnotes omitted.) *Marks, supra,* at 243. The least intrusive question then becomes that of whether there exists a private right of action under the state statute for the particular plaintiff. *See id.*

In researching the extent of the definitional decisions under the Florida "Little FTC", a few generalizations may be made. For example, the statute appears to be directed to entities that have been tradition-

any trade or commerce are hereby declared unlawful.

(2) It is the intent of the legislature that in construing subsection (1) of this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended. Fla.Stat. § 501.204 (1982).

**2.** Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful. 15 U.S.C. § 45(a)(1) (1982).

**3.** *See* note 1, *supra.*

ally thought of as consumers, in situations traditionally thought of as consumer transactions. In *Black v. Department of Legal Affairs*, 353 So.2d 655 (Fla.App.1977) [2d DCA], the court stated that "the obvious purpose of the act is to protect the unwary from being 'conned' into investing in unsound, fly-by-night business ventures." *Id.* at 656. The *Black* court went on to state that the word "unwary" must be emphasized, and, in fact, held that no showing of unwariness having been made, the judgment for reimbursement was unwarranted.

There is a surprising dearth of case law illuminating the scope of the Florida fair trade law. The only issues that appear to have been decided are the following: (1) the sale of real estate lots is not a consumer transaction, despite the fact that the FTC regulates such sales (*See State ex rel. Herring v. Murdock*, 345 So.2d 759 (Fla.App. 1977) [4th DCA]); (2) the purchase of sodding incident to the purchase of a house is a consumer transaction (*See Deltona Corporation v. Jannotti*, 392 So.2d 976 (Fla.App. 1981) [1st DCA]); (3) the purchase of an automobile is a consumer transaction (*See Bert Smith Oldsmobile, Inc. v. Franklin*, 400 So.2d 1235 (Fla.App.1981) [2d DCA]); (4) an automobile manufacturer's failure to honor its express warranty was a deceptive practice within the meaning of the Act (*See Trexler v. Fiat Motor Co.*, 400 So.2d 1320 (Fla.App.1981) [5th DCA]); (5) the leasing of a real estate lot in a mobile home park is not a consumer transaction (*See State v. DeAnza Corporation*, 416 So.2d 1173 (Fla. App.1982) [5th DCA]); (6) the sale of real estate is not a consumer transaction (*See Brown v. Gardens by the Sea South Condominium Association*, 424 So.2d 181 (Fla.App. 1983) [4th DCA]).

Thus, the question appearing never to have been resolved by the Florida courts, and pursuant to the above and foregoing, the motion for summary judgment as to Count III is GRANTED.

■ Count IV is for breach of contract. In accordance with the Uniform Commercial Code (UCC), a contract for more than $500.00 must be in writing in order to be enforceable. *See* Fla.Stat. § 672.201(1) (1978).[4] The contract in the case at bar may have never been in writing in any final form; however, there is an exception under the UCC for contracts that have been admitted to exist in the pleadings. *See* Fla. Stat. § 672.201(3)(b) (1978).[5]

In the case *sub judice* Travenol admitted in its Answer (Paragraph 22) that it made an agreement to purchase thirty million clamps. This answer admits the paragraph of the Complaint which states: "During the meeting described in paragraph 21 above, Chiodo was told that Travenol did not want PCI competing with Travenol in the hand clip sealer market and that, Travenol would refuse to fulfill its obligations under the *agreement* by which Travenol had *agreed* to purchase an initial order of 30,000,000 PCI HSC–119 hand sealer clips from PCI unless PCI agreed not to sell hand sealer clips to any other customer." (Emphasis added.)

Thus, it does not appear that Travenol is entitled to summary judgment on this count for the reason that an enforceable contract may indeed exist.

Count V is based on the same contract. Travenol asserts that it is entitled to summary judgment on this count for the same reason—that no enforceable contract exists. For the same reason—the admission in the answer—the motion is DENIED.

---

**4.** Fla.Stat. § 672.201(1) (1978) states, in pertinent part, the following: Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

**5.** Fla.Stat. § 672.201(3)(b) (1978) states that "[a] contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable ... if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted...."